[No. 965.   Decided December 5, 1893.]

CATHERINE A. PRATSCH et al., Appellants, v. ABERDEEN PACKING COMPANY, Respondent.

VENDOR AND PURCHASER — SALE OF LAND — DEFICIENCY IN QUANTITY — CAVEAT EMPTOR — REMEDIES — REFERENCE.

A purchaser of land who knows of the facts concerning the seller's title and of the deficiencies therein, when he contracts, is not entitled to compensation in a suit for specific performance and abatement of price.

Where a strip of land lying between a street of a city and a meandered river is platted into lots, the plat not showing the depth of the lots between the street and river, a purchaser of a lot who contracts with reference to such plat, cannot claim that he was misled thereby into the purchase of a lot which was only about one-fifth of what he contracted to purchase, when he was fully acquainted with the quantity of land in the lot which lay between the street and the river.

Findings of fact made by a referee in an equity cause may be set aside and others made by the court.

In an action for specific performance and compensation for the loss of land, the complainant should not be subjected to a dismissal of his action on a finding against him, where no forfeiture has been declared against him and he has paid into court the purchase money due, but he is entitled to a decree of specific performance upon payment of all costs.

*Appeal from Superior Court, Chehalis County.*

*J. C. Cross*, for appellants.

*Fulton Bros.*, for respondent.

The opinion of the court was delivered by

STILES, J. — In June, 1890, the respondent was the owner of a narrow strip of land lying to the eastward of F street in the town of Aberdeen, between what would have been Hume and River streets had those streets been extended.  The east boundary of the strip was the Wishkah river, a meandered stream in which there was a large ebb and flow of the tides.  The river was navigable for all ordinary water craft, and was supposed to be subject to the provisions of the state constitution relating to harbor lines.  The meander line as run by surveyors of the United States, opposite the strip in question, was some thirty or forty feet from the east line of F street, but the line of actual mean high water was only some fifteen or twenty feet therefrom.  Respondent was, and for some time had been, the owner of whatever land there was between F street and the river, and for some years had had upon the land and upon piles driven into the bed of the river a fish cannery with suitable buildings.  The total breadth of the area thus covered by the cannery wharf and property was some seventy-six feet at the north end of the strip, and about one hundred and twenty feet at the south end; and the length of it was three hundred feet.  The outer edge of the wharf was at about the line of extreme low tide.

Being desirous of selling its property, the respondent,

in said month of June, orally proposed to ten persons, of whom appellant Catherine Pratsch was one, that it would subdivide its tract into ten lots of thirty feet frontage on F street each, by a plat to be accepted by the Aberdeen town council, and filed in the office of the county auditor, and would sell the lots for a total of twenty thousand dollars, each lot to bear its just proportion of the price as might be determined among the purchasers. This proposition was agreed to, the plat was filed, and appellant Catherine Pratsch entered into a contract with respondent for lot 7 of the plat, which was the most northerly of the lots, for the sum of $2,125, part cash and part in deferred payments, the respondent agreeing to execute a warranty deed upon receiving the last payment. Under this contract appellants went into possession of their lot, and of the building erected thereon, and made the two deferred payments due in six and twelve months. The third and last payment, due in eighteen months, they did not make, but commenced this action, alleging a lately discovered deficiency in the amount of land owned by respondent, and fraudulent representations on the part of the respondent in connection with the amount of land it owned and could convey as inducements to appellants to contract. These representations were said to consist of persuasive arguments and statements made by respondent's agent for the sale of its property, going to show that, although there was only a few feet of land between the street and the water of the river, respondent could sell, and would sell and make good title to, all of the area covered by its wharf, and perhaps of some not actually so covered, the most positive statement being alleged to be that the outer wharf line was even within the meander line of the river as originally surveyed, and, therefore, the title of respondent must be good to that point.

The gist of the allegations was, that the agent had as-

serted, and induced appellants to believe, that he could make title out to the edge of the wharf, that he had promised to file a plat covering the entire wharf, and that at the time of executing the contract he had represented that such a plat had been filed.

If there was a mere promise to file a plat, the case would seem to be like that of *Kelly v. West Seattle Land Co.*, 4 Wash. 194 (29 Pac. Rep. 1054), where the purchaser was held bound by the plat which was referred to and made a part of her deed. If, on the other hand, a lot had been sold according to a plat on file, and the seller had falsely represented the size of the lot, and the title to part of the lot had failed, there would have been a case like that of *Sears v. Stinson*, 3 Wash. 615 (29 Pac. Rep. 205). But the plat, in this instance, showed no length of the lot at all. It showed a frontage of thirty feet on F street and on the Wishkah river, and parallel side lines between the street and the river, but the side lines had no length assigned to them. It was as if there had been a description by metes and bounds, reading "east from the east side of F street to the Wishkah river," and *vice versa*. The interpretation of the contract would, therefore, be that the land from the street to the river, with a breadth of thirty feet, was to be conveyed, and a deed of that description would fully satisfy its terms. The attack made by the appellants must be upon the contract, which, they say, does not express the understanding between them and the agent under his representations. They do not ask to have the contract reformed, but rather seek to lay it aside, and to have specific performance of an executed oral contract based on the representations of the agent, their payment of part of the purchase money and tender of the balance, and their entry into possession of the premises; and they also demand the re-payment to them of $1,625 of the purchase

money on account of the loss to them of that part of the lot to which respondent can make no title.·

We think it might well be questioned whether, in a case where so large a proportion of the title fails as is here alleged (more than four-fifths), a court of equity ought to decree a specific performance with compensation. Waterman, Specific Performance, § 206. But there is no objection to the purchaser's taking what the vendor has to convey ·at the full contract price.

Concerning the proofs adduced to sustain the allegations of fraudulent misrepresentations in this case, for the purpose of showing a different contract to have been intended, it must be premised that in the face of the written agreement only clear, positive and satisfactory evidence would suffice. Pomeroy, Eq. Jur. (2d 'ed.), § 862.

Appellants, and several other witnesses (all, however,· purchasers of parts of the same premises), deposed that respondent's agent had told them, in frequent interviews, that the meander line of the river, according to the original survey, lay along the outer edge of the wharf, and that respondent's title extended to that point; to which his answer was that he did not know, and never pretended to say where the meander line was, but that he did say that the wharf as it was did not interfere with navigation, and that their possession would never be disturbed for that reason, and nothing more. But, however the truth may be as to the agent's statements, we are unable to see wherein any great reliance could justly have been placed in the appellant's version of them. It did not appear that he had, or claimed to have, any superior knowledge of the location of the meander line, even if they were justified in their belief that the government survey and not the actual line of mean high water was the boundary of the title. The tract was sold by the United States to respondent's grantor, and

conveyed to him by patent which had been of record since 1883. This patent contained no description of the meander line, and it is well known that all surveys of such lands locate meander lines not as boundaries, but for the purpose of ascertaining the quantity of land only. *Railroad Co. v. Schurmeir*, 7 Wall. 272. The purchaser takes to the water, and his boundary is subject to the laws of accretion and reliction. Gould on Waters, § 155.

But as against the appellants' evidence and claim of deception there were some patent and important facts. In the first place appellants had lived in the immediate vicinity of the lot for more than nine years, and were perfectly familiar with it. Secondly, the front of the lot only, embracing but ten or fifteen feet, was above the water at ordinary high tide. It is true that the whole of the lot was covered by a building, but a photograph taken the day before the hearing shows that the most casual observer could not fail to see that the water came up nearly to the floor, the building being erected on piles with the exception of the front end. Everybody there knew that the tide ebbed and flowed over nearly the whole lot, and that ocean going vessels lay at low water alongside the end of the wharf. It is a rule in such cases that a purchaser who knows of the facts concerning the seller's title, and of the deficiencies therein when he contracts, is not entitled to compensation in equity, but is left to his remedy at law. Waterman, Specific Performance, § 506.

Again, at the time when the contract of sale was executed, appellants and the other nine purchasers were in the agent's office, where there was a duplicate of the recorded plat exhibited on the wall. This plat had been recorded the day before, and the contract made it a part of itself; it was, therefore, the duty of the purchasers to examine it for themselves to see whether the descriptions upon it accorded with their understanding of what they were buying.

For, if they had paid a moment's attention to the plat they must have seen that it purported to give no dimensions of the side lines of lots, which were merely drawn from F street as the west boundary to the Wishkah river on the east. It is sought to break the force of this point by a showing that a pencil sketch, or plat, which the agent had used to illustrate the proposed platting when he was negotiating for sales, lay on the table, and was alone regarded by the purchasers. But while it appears that the sketch showed lines which were actually longer in proportion than those on the recorded plat, it also appears that no dimensions were given to these lines either, and that the river terminated them. Moreover all parties knew that some sort of a survey was to be made, and an official plat constructed therefrom, and it was their business to see that when finished and recorded it expressed their preliminary agreement, before they merged their negotiations into a written instrument. Failing of that degree of care, and failing also to show that the statements of the agent were really more than mere puffing arguments to persons having equal knowledge of the facts with himself, we think the findings of the court below should stand.

These findings were made by the court after setting aside other findings of fact made by a referee appointed for that purpose. Appellants complain of this action; but it was taken upon exceptions duly filed, and was in exact accordance with the statute governing references (Code Proc., title 7, ch. 5), and we see no objection to it. The findings of the referee were merely advisory, as it was an equity cause.

Before proceeding to a disposition of the case, it is necessary to advert to a motion of the respondent to strike the statement of facts. But objections to the statement are obviated by the fact that the testimony was taken by a referee, and reported by him in the shape of depositions,

a stipulation of counsel providing that the longhand notes of the stenographer should be considered the same as though the witnesses had signed the same. *Healy v. Seward*, 5 Wash. 319 (31 Pac. Rep. 874).

The court below dismissed the action, but we cannot quite agree to that judgment. The contract provided, by stringent language, for the right of the respondent to declare a forfeiture in case of the failure of the appellants to pay the purchase money at the time fixed. But although when the action was commenced appellants were in default on their last payment of $531, no forfeiture had been declared. A forfeiture had been threatened by letter, but before any declaration was made the suit was brought, and at the same time appellants, by their complaint and the actual deposit of money paid into court for the use of the respondent, tendered the full amount of the last payment, with interest. This was all that the respondent could have demanded at the time, and if interest from the commencement of the action till now be added, and the costs of this action be charged to appellants, it is all that it can demand now. Appellants had a right to have their rights tested in court, and if they at all times keep respondent harmless, it cannot complain. They prayed in their complaint for a specific performance, with other proper relief, including, as they deemed they had a legal right to do, compensation for the loss of land; and we do not think equity would be done by merely dismissing their action and subjecting them to a forfeiture of all they have paid.

If, within thirty days after the filing of this opinion, appellants shall pay into the superior court of Chehalis county, for the use of respondent, interest on $531 at ten per cent. per annum from May 19, 1892, to the date of such payment, and file the receipt of the clerk of that court with the clerk of this court, and pay all costs of both courts, a decree will be directed that respondent convey

the premises in accordance with the contract, whereupon it will be entitled to further receive the $531 deposited with the clerk of the superior court; otherwise, the judgment of the superior court will be affirmed.

ANDERS, SCOTT and HOYT, JJ., concur.

DUNBAR, C. J., concurs in the result.